IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL CALDWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:04-CV-2546-D |
| VS. | § | |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Michael Caldwell ("Caldwell") brings this action
under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for
judicial review of the final decision of the Commissioner of Social
Security ("Commissioner") denying his application for title II
period of disability and disability insurance benefits.   The
administrative law judge ("ALJ") found that Caldwell is not
disabled because he retains the capacity to perform most sedentary
work.  For the reasons that follow, the court affirms in part, and
vacates and remands in part, the Commissioner's decision.

I

Caldwell was 48 years old when the hearing before the ALJ was
conducted.   He has a high school education and has previously
worked as a utility worker, delivery driver, and exterminator.
Caldwell filed an application for disability benefits on December
4, 2001, contending that he became disabled on July 7, 1999 due to
a back injury and lower extremity pain.  His application was denied

initially and on reconsideration, and he requested and received a hearing before an ALJ.

The ALJ concluded in a written decision that Caldwell is not disabled. He determined that Caldwell was insured for benefits through the date of the decision and had not worked since the onset of his disability. R. 22.[1] Although Caldwell's back problems left him substantially impaired, his impairment did not meet any of those listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ found at step four that Caldwell could not perform his past relevant work. But he found at step five that Caldwell has the residual functional capacity ("RFC") to perform substantially all of the full range of sedentary work, and he therefore is not disabled under the Act. The Appeals Council denied Caldwell's request for review, and the findings of the ALJ became the final decision of the Commissioner. Caldwell now seeks judicial review.

II

The court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)

---

[1]The Commissioner contests the date Caldwell was last insured for benefits. Because the court is remanding this case on other grounds, the ALJ may reconsider this issue.

(per curiam).   "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citation omitted).   "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173 (citation omitted).   "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley*, 67 F.3d at 555 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).   "It is more than a mere scintilla and less than a preponderance." *Id.* (quoting *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (internal quotation marks omitted)).   To make a finding of "no substantial evidence," the court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).   Even if the court should determine that the evidence preponderates in the claimant's

- 3 -

favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74.  The Commissioner must consider (1) whether the claimant is presently working; (2) whether the claimant's ability to work is significantly limited by a physical or mental impairment; (3) whether the claimant's impairment meets or equals an impairment listed in Appendix 1 to the regulations; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2005).  A mental impairment is evaluated by the same sequential process. *See* 20 C.F.R. § 404.1520a (2005).

For purposes of social security determinations, "disability" means the inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment that could be expected to last for at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A).  To establish disability, the record must

- 4 -

show that the limitations imposed by plaintiff's conditions prevent him from engaging in any substantial gainful activity. *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* (citation omitted). Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* Prejudice is established when the claimant demonstrates that he would have adduced evidence that might have changed the result. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v.*

*Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

Caldwell objects to the ALJ's decision on three grounds. He contends the ALJ failed to consider whether he is eligible for a closed period of disability, failed to assess whether his impairment qualified as an impairment under Listing 1.04 before the surgery, and did not give the proper weight to all the medical source testimony.

III

Caldwell maintains that the ALJ erred by failing to evaluate or discuss whether he is entitled to a closed period of disability from the alleged onset date until his recovery from back surgery. Closer inspection of Caldwell's argument demonstrates, however, that he is not complaining that the ALJ wholly failed to consider a closed period of disability, but is instead arguing that the ALJ erred in concluding that he retained the RFC for sedentary work throughout the relevant time period.[2]   *See* P. Br. at 8.   The pertinent inquiries, therefore, are whether the ALJ's finding that Caldwell was not disabled at any time through the date of his decision is supported by substantial evidence and whether the ALJ

---

[2]Moreover, if Caldwell does in fact assert that the ALJ completely failed to consider eligibility for a closed period of disability, his argument is undermined by the ALJ's finding that Caldwell "was not under 'disability,' as defined in the Social Security Act, *at any time* through the date of this decision."  R. 22 (emphasis added) (citation omitted).

- 6 -

applied the proper legal standards in this respect.[3]    The
Commissioner does not directly respond in her brief to this
argument as phrased or as the court has construed it.[4]

Caldwell's argument is not entirely clear, but it appears that
he advances three bases to contend that the ALJ's conclusion is
erroneous: (1) the ALJ's conclusion is unreasonable in light of
Caldwell's surgery; (2) the ALJ devoted only four sentences in his
decision to analyzing the period from Caldwell's surgery onset date
to the date of his surgery, and his findings are defective;[5] and

---

[3]The court notes that a closed period of disability was not
discussed during the hearing.  Because the briefing is silent on
the issue——and, in particular, because the Commissioner does not
argue that the ALJ was *not* required to consider Caldwell's
eligibility for a closed period——the court assumes *arguendo* that
the ALJ was required under the circumstances of this case to
consider whether Caldwell was eligible for a closed period of
disability, notwithstanding the absence of a specific request.

[4]Although Caldwell's argument is mislabeled, the
Commissioner's briefing, as in other cases that the court has
decided in the recent past, is only marginally helpful because it
fails to address the argument adequately.  *See Frames v. Barnhart*,
No. 3:03-CV-0924-D, slip op. at 7-8 (N.D. Tex. June 23) (Fitzwater,
J.) ("Although the Commissioner is not obligated to respond at
length to an argument that lacks colorable merit or to address
directly a contention that can be dispensed indirectly on a
separate ground, it aids the court's understanding of her arguments
when she makes clear the approach she is taking."), *appeal
docketed*, No. 04-11028 (5th Cir. Aug. 30, 2004).

[5]Caldwell also posits that the ALJ's statement that his
surgery was in November 2002, rather than in November 2000,
"illustrates the ALJ's neglect in considering the evidence before
his surgery[.]" P. Br. at 9.  The court discerns no prejudice
resulting from the ALJ's erroneous reference to the date of
Caldwell's surgery.  Nor does the court determine that it shows
that the ALJ was neglectful in considering the evidence, especially
in light of Caldwell's own inconsistency regarding the same fact.

(3) the ALJ failed to discuss certain medical evidence that Caldwell maintains establishes that he is disabled.

A

Caldwell contends the ALJ's conclusion that he had an RFC that enabled him to perform sedentary work throughout the entire relevant period is unreasonable in light of his surgery. He maintains that, if the ALJ's conclusion is correct, he "underwent an intrusive surgery . . . and gained absolutely no benefit from it, as he retained the ability to perform the same sedentary functions after the surgery as he did before it." P. Br. at 9.

Caldwell's argument, which appears to rest on nothing more than what he (or his counsel) considers logical, without citation to the record evidence or to any legal standards (e.g., concerning the definition of sedentary RFC) is unavailing. Sedentary work involves sitting, lifting no more than ten pounds, and occasionally walking or standing. *See* 20 C.F.R. § 404.1567(a) (2005). The fact that a person who has the RFC to perform sedentary work before surgery also has the RFC to perform sedentary work after surgery is not fallacious as a matter of logic. Surgery is not always curative or ameliorative from the standpoint of RFC. Thus the fact that a person could only perform sedentary work following surgery does not perforce mean that he could not do work at that level

---

*Compare id.* at 8 (surgery on November 1, 2000) *with id.* at 9 (surgery on November 2, 2000).

before surgery.   The court declines, absent medical or other
evidence, or anything more than Caldwell's sense of what is
reasonable, to disturb the decision of the Commissioner.

                              B

    The court considers Caldwell's remaining two arguments on this
issue together, because they both challenge the ALJ's discussion of
the medical evidence of his impairment before surgery.   Caldwell
asserts that the ALJ's discussion of the medical evidence is
superficial and evinces that he did not fully consider all the
evidence.

    Caldwell correctly characterizes the ALJ's recitation of the
medical evidence before his November 2000 surgery as brief.   The
ALJ found, in pertinent part:

> A review of the medical evidence of record
> discloses that the claimant injured his spine
> in a work-related accident of July 1999.  Mr.
> Caldwell received conservative treatment and
> epidural injections, and underwent physical
> therapy of six weeks with a minimal response.
> Progress notes [from] a pain clinic show that
> he reported improvement from narcotic pain
> medications and that changes were made to his
> regimen.  Films revealed degenerative changes,
> most severe at L5/S1.  In January 1999 he was
> given an impairment rating of 10% and on May
> 27, 1999, he was precluded from work until
> further notice.

R. 15-16 (citations omitted).[6]   The ALJ also found that Caldwell
was released to operate a vehicle in November or December 2000 and

---

[6]The balance of the quoted paragraph pertains to his surgery
and condition following surgery.  *See* R. 16.

that an examining physician recommended in August 1999 that he be restricted only from performing a manual labor job.  R. 18.

Caldwell also complains that the ALJ failed to discuss medical evidence that tended to show the severity of his impairment before surgery.  He points specifically to tests performed in May and June 1999 that show compression and stenosis and a March 2000 lumbar discogram that shows abnormal architecture at L5-S1 and suggests that he would benefit from a procedure to stabilize the spine at that level.

The Fifth Circuit has rejected a rule requiring the ALJ to "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  The court therefore declines to find reversible error merely because the ALJ did not specifically discuss the evidence Caldwell cites.  Nevertheless, the ALJ's findings and conclusions must sufficiently illustrate his reasoning so that this court can "follow his reasoning and determine that he traveled an acceptable analytical path" in concluding that Caldwell was not disabled before surgery. *See Murphy v. Barnhart*, No. 3:02-CV-2741-D, slip op. at 11 (N.D. Tex. Feb. 9, 2004) (Fitzwater, J.). In the context of the present case, the court must be able to ascertain why the ALJ declined to credit the evidence that Caldwell cites and that could support the premise that he was disabled before undergoing surgery in November 2000.

The ALJ cites, *inter alia*, the August 27, 1999 report of Richard H. Jackson, M.D. ("Dr. Jackson"), an examining physician, for the fact that Caldwell was only precluded from performing a manual labor job.[7] The ALJ may also have relied on Dr. Jackson's opinion that there was no significant nerve root compression and that Caldwell's "subjective symptoms are out of proportion to his normal neurologic clinical examination and MRI and myelogram/CT scan images," R. 194, to reject the evidence Caldwell contends the ALJ failed to consider. The ALJ's decision, however, is silent concerning how he evaluated this evidence. Had the ALJ expressly adopted this opinion, the court might be permitted to conclude that the ALJ implicitly rejected the contradictory medical evidence. Because the ALJ did not discuss any of this medical evidence, the court cannot determine whether the ALJ rejected the medical evidence Caldwell cites in favor of conflicting evidence, ignored the evidence of pre-surgery injury Caldwell cites, or afforded the evidence some other treatment. The court therefore cannot say that he followed a proper path—i.e., applied the proper legal standards—to conclude that Caldwell was not disabled before his

---

[7]Caldwell contends that the statement that he was precluded from performing only manual labor is false because he had been removed from all work one month earlier. It is true that a Certified Physician Assistant indicated that Caldwell would be removed from work. This fact, however, does not conclusively demonstrate that Caldwell was physically precluded from all work; it merely creates an inconsistency in the evidence to be resolved by the ALJ.

surgery.   The court likewise cannot conclude that the ALJ's decision is supported by substantial evidence.

Accordingly, the court vacates the ALJ's decision to the extent he determined that Caldwell is not entitled to a closed period of disability and remands for further proceedings.

IV

Caldwell argues that the ALJ failed to evaluate whether before surgery he met or equaled a disability from Listing 1.04.  Because the court is remanding this case to the Commissioner to reconsider whether Caldwell is entitled to a closed period of disability, this issue will necessarily be addressed on remand during the third step.

V

Caldwell also contends that the ALJ did not properly weigh the opinions of Andrew M. Klymiuk, M.D. ("Dr. Klymiuk"), Caldwell's treating physician.

A

Caldwell argues that it is unclear what part of Dr. Klymiuk's opinion the ALJ rejected and that this is not specific enough for subsequent reviewers to assess his analysis.  Caldwell also posits that, contrary to the ALJ's assessment, Dr. Klymiuk's opinion is consistent with his own treatment notes and with the balance of the record evidence.

The court's review of the Commissioner's decision is limited

to determining whether it is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *Ripley,* 67 F.3d at 555. The court holds that the decision is supported by substantial evidence and that the ALJ applied the proper legal standard.

Dr. Klymiuk expressed the opinion at issue in a May 29, 2002 note. In the note, addressed to "To Whom It May Concern," Dr. Klymiuk reported:

> Michael Caldwell has been a patient at The Texas Pain Medicine Clinic since January 2001. He suffers from a chronic pain condition, which is currently being maintained fairly well. He, however, has many limitations. Part of his pain management is to avoid situations which aggravate pain as much as possible. Due to the limitations, the patient is unable to hold a full-time job because of the pain limiting his ability to concentrate and stay focused. He can only sit in one place for a maximum of two hours at a time. After each half an hour break, his time in the sitting position may even decrease.

R. 197.

The ALJ rejected in its entirety Dr. Klymiuk's May 29, 2002 opinion when he rejected "Dr. Klymiuk's opinion contained in Exhibit 7F." *See* R. 19. This does not suggest, as Caldwell contends, that the ALJ adopted part and rejected part of the opinion; rather, the ALJ rejected the entire opinion. The decision is therefore sufficient for the court to review the ALJ's analysis.

The ALJ rejected Dr. Klymiuk's opinion as brief and conclusory, inconsistent with the remainder of his opinions and the

balance of the record, and unsupported by diagnostic tests.  R. 19. The ALJ specifically stated that Dr. Klymiuk's opinion is unsupported by statements of other physicians, by the findings of state agency medical experts, and by the testimony of the medical expert.  *Id.*

To the extent Caldwell complains about the ALJ's rejection of Dr. Klymiuk's opinion that he is unable to hold a full-time job, his argument is unavailing because this opinion is not a medical opinion that the ALJ must credit.  Rather, it is a legal conclusion reserved to the Commissioner, and the ALJ was permitted to disregard it in the instant case.  *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (on rehearing) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" (citing 20 C.F.R. § 404.1527(e)(1))).

The only other opinion that arguably contradicts the ALJ's decision is Dr. Klymiuk's judgment that Caldwell is unable to sit in one place for more than two hours at a time, then must take a half-hour break.  This statement, however, is not inconsistent with the ALJ's finding that Caldwell can perform sedentary work.  Dr. Klymiuk did not provide an opinion regarding the maximum amount of time Caldwell can sit in an eight-hour workday.  The relevant regulation defines sedentary work as follows:

> Sedentary work involves lifting no more than
> 10 pounds at a time and occasionally lifting

- 14 -

> and carrying articles like docket files,
> ledgers, and small tools.   Although a
> sedentary job is defined as one which involves
> sitting, a certain amount of walking and
> standing is often necessary in carrying out
> job duties.  Jobs are sedentary if walking and
> standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. § 404.1567(a).  The fact that Caldwell cannot sit more

than two hours in one place is not inconsistent with a finding that

he can sit during much of the workday.  *See Bradley v. Bowen*, 809

F.2d 1054, 1055, 1057 (5th Cir. 1987) (per curiam) (affirming ALJ's

decision that claimant was not disabled where examining physician

stated that claimant could sit for two hours at a time, up to eight

hours).  In fact, had the ALJ credited Dr. Klymiuk's opinion in

this respect, the ALJ still could have concluded that Caldwell was

able to sit more than six hours in an eight-hour workday.  Such a

finding would also be consistent with the March 19, 2002 RFC

assessment performed by Kelvin A. Samaratunga, M.D. ("Dr.

Samaratunga"), a consulting physician, and the testimony of

Sterling E. Moore, M.D., ("Dr. Moore"), the medical expert who

testified at the hearing.  Dr. Samaratunga opined that Caldwell

could sit, with normal breaks, for six hours in a workday.  R. 109.

The ALJ credited Dr. Moore's testimony that Caldwell "had ability

to engage in work activities involving sitting 6 out of 8 hours *at

2 hour intervals*[.]"  *Id.* at 15; *cf. Edwards v. Chater*, 1997 WL

271365, at *2-*3 (E.D. La. May 20, 1997) (holding claimant could be

found able to perform sedentary work although limited to sitting

- 15 -

not more than two hours at a time).  Because Caldwell has not
demonstrated that Dr. Klymiuk's opinion regarding his ability to
sit for a maximum of two hours is inconsistent with the ALJ's
findings, he has not shown that he was prejudiced by the ALJ's
rejection of this opinion.  Accordingly, the court declines to
reverse the ALJ's decision on this basis.

                                    B

     In attacking the weight the ALJ gave Dr. Klymiuk's May 29,
2002 opinion, Caldwell also suggests that the ALJ implicitly
rejected a portion of Dr. Klymiuk's February 27, 2002 opinion.  In
this opinion, Dr. Klymiuk noted that Caldwell was taking medication
for depression before the death of his brother.  R. 200.  His
progress note contains the statement (and it is not clear whether
this is a restatement of Caldwell's assertion or Dr. Klymiuk's own
conclusion) that "[h]is brother's death and the grieving after he
was gone had nothing to do with starting the antidepressant."  *Id.*
The ALJ determined, however, that Caldwell suffered "situational
depression related to the death of his brother and for financial
difficulties."  R. 18.  The court agrees that this is a partial
rejection of Dr. Klymiuk's February 27, 2002 opinion.  Caldwell has
not demonstrated, however, that the ALJ's decision is reversible on
this basis.

     Caldwell stated at the hearing that his pain had not responded
to medical therapy or pain medications.  The ALJ discounted this

                                - 16 -

assertion.  He found that, contrary to Caldwell's contention, the medical evidence demonstrated that Caldwell had responded well to medical treatment and pain medication.  Specifically, the ALJ pointed, *inter alia*, to (1) a December 2001 treatment note that indicated that he was taking no more than two or three Norco daily and that he described his pain as a 5 out of 10 overall, which is not a disabling level of pain; (2) a February 2002 treatment note that described Caldwell as doing well with his current medications; (3) a September 2002 note that indicated Caldwell's pain was fairly well controlled; and (4) a January 2003 opinion in which it was noted that Caldwell was functioning with medications controlling his pain.  *Id.*

The ALJ further explained that Caldwell's assertion was not supported by observable signs typically seen in persons who have severe unremitting pain that is unresponsive to treatment or medication.  He observed that Caldwell has been consistently described as "cooperative, alert, fit appearing, fully oriented, pleasant, and with normal thought and speech," and he had never reported any suicidal ideation or significant emotional or psychological regression or deterioration.  *Id.*  It was in this context that the ALJ found that Caldwell was treated for situational depression related to the death of his brother and financial problems.  But immediately thereafter, he noted that Caldwell had responded very well to psychotropic medications.  Even

if the ALJ had found that the use of psychotropic medications was unrelated to his brother's death or his financial difficulties, the ALJ still would have concluded that he was responding very well to the use of such medications.  The fact that Caldwell responded well to psychotropic medications undermined his statement that the pain had not responded to medical treatment or pain medication, even if these medications were prescribed to help him deal with his back pain.  Caldwell has not shown that the ALJ might have reached a different conclusion had he found that Caldwell's use of psychotropic medications was unrelated to his brother's death or his financial difficulties.  Caldwell has therefore failed to show reversible error on this basis.

*       *       *

The Commissioner's decision is AFFIRMED in part and VACATED in part and REMANDED to the Commissioner for further proceedings consistent with this memorandum opinion.

August 17, 2005.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 18 -